## Crown Coal and Tow Co. v. Edward L. Thomas.

73  679
177s 534
73  679
s90  570

1. EQUITY JURISDICTION—*When it Does Not Depend Upon the Absence of a Remedy at Law.*—When the state of the accounts is complicated and involved with third persons, and to do justice to the parties interested, requires the employment of methods of investigation peculiar to courts of equity, their jurisdiction does not depend upon the absence of a remedy at law.

2. SAME.—*Where the State of Accounts is Complicated, Etc.*—Where the state of accounts between the parties is complicated and intricate, or is involved with third parties, where to do justice requires the employment of methods of investigation peculiar to courts of equity, and where it would be very difficult for a jury to unravel the numerous transactions, are conditions usually held to be sufficient to give a court of equity jurisdiction. The jurisdiction in equity does not in such cases depend upon the absence of a remedy at law, but upon its adequacy or practicability, and upon the discretion of the court.

3. EQUITY PRACTICE.—*Whoever Assails a Master's Report Must Preserve His Exceptions, Abstract.*—Whoever assails a master's report should preserve his exceptions, bring them into his abstract, and show the report to be wrong.

4. PRACTICE.—*The Burden of a Party Challenging the Action of a Court.* Whoever challenges the action of a court should show that in apt time he properly advised and moved the court.

Bill for an Accounting. Appeal from the Circuit Court of St. Clair County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Heard in this court at the August term, 1897. Affirmed. Opinion filed March 1, 1898.

G. A. KOERNER, attorney for appellant.

CHARLES W. THOMAS, attorney for appellee.

Mr. Presiding Justice Creighton delivered the opinion of the Court.

This was a suit in chancery commenced and prosecuted in the Circuit Court of St. Clair County by Edward L. Thomas against the Crown Coal and Tow Company, Bart S. Adams and John T. Taylor, and resulted in a decree for $6,309.89 in favor of Thomas. The Crown Coal and Tow Company bring the cause to this court by appeal.

In the year 1887 there was organized under the laws of the State of Illinois a corporation styled the Crown Coal Company, and in the month of March, 1893, appellee Thomas and the said Adams and Taylor owned all the stock of the said corporation, and the said corporation owned and was operating a coal mine and had due it a large amount in "book accounts" for coal sold in the course of business, and owed the expenses incurred in operating the mine in the previous month. Thomas, Adams and Taylor also jointly owed $4,500 to one Meisenberger, a former stockholder in said corporation, for his stock jointly purchased by them. Taylor and Adams owned a coal mine known as the Harmony Mine and certain coal leases, Adams owned an interest in the Western Coal and Tow Company, and one Samuel H. Leathe owned certain coal lands and a line of tugs.

The above named parties cooperated together with others in a reorganization of the Crown Coal Company, increasing its capital stock from $30,000 to $200,000, and changing its name to the Crown Coal and Tow Company; and all the above mentioned property were by their respective owners contributed and turned over to the reorganized concern, and its business thereafter carried on with this property. The reorganization was completed at a meeting, of all the parties

interested, held March 25, 1893, and all the $200,000 of stock was distributed among the contributors and certain other parties who had contributed nothing, without any reference to the amounts contributed by each or to the fact that a number had contributed nothing. At this same meeting, and as a part of the reorganization scheme, it was orally agreed and understood that all who had contributed should be reimbursed by the corporation to the extent of the value of their respective contributions, but the minutes of that meeting contain no mention of such an agreement. The original plan for reimbursement was found to be impracticable, and thereupon, at a stockholder's meeting held March 1, 1894, the following resolution as shown by the minutes of that meeting was presented and adopted:

"Whereas, the capital stock of this company has been contributed by various stockholders in unequal proportion, the distribution of the stock having been made without reference to the amounts contributed; and whereas, this company was originally projected and organized by the parties interested in a certain railroad then known as the Belleville & St. Louis Railroad and now known as the Belleville City Railway as an adjunct to said railroad;

"And whereas, it was originally contemplated, understood and agreed by the parties interested in the formation and organization of this company that all the amounts advanced by any of the stockholders to this company should be repaid out of the proceeds of bonds to be issued by the said railroad company and guaranteed in part by this company, and that the stock of this company should be subject to the indebtedness created by said bonds;

"And whereas, various of the stockholders of this company, on the faith of the said agreement and under-

standing, have advanced large sums of money to this company and have conveyed to it property of great value;

"And whereas, a doubt has arisen as to the legality of such proposed indorsement or guaranty by this company of the bonds of the said railroad company or the application of the bonds of the said railroad company, to the purpose of this company and said plan has been in consequence abandoned;

"And whereas, it is the desire of this company that the true intent and meaning of said agreement and understanding be carried out, and that the person conveying their money and property to this company on the faith thereof be protected; therefore it is

"Resolved, That the president of the company deliver to each stockholder who has contributed either money or property to the capital of this company at par bonds of this company to an amount equal to such contributions with interest from the date thereof to this date."

There having arisen a dispute as to the amount at which the Crown Coal Company property and good will was taken, that dispute was at that meeting settled, as appears from the minutes:

"The dispute as to the amount at which the Crown Coal Company's property and good will was taken by this company, was this day settled by agreement of all the stockholders present, and said figure was fixed at $18,000 of March 1, 1893, the same not to include the book accounts belonging to the Crown Coal Company."

In pursuance of the action taken by the stockholders at their meeting of March 1, the directors met March 10 and as shown by the records of that meeting unanimously passed the following:

"Resolved, That the Union Trust Company of St.

Louis, trustee in the mortgage given by this company to secure its bonds, be authorized and requested to make delivery of said bonds as follows, to wit:

"To Samuel H. Leathe.....................................$118,500 00
"To Bart S. Adams.......................................  10,000 00
"To John Taylor ... ....................................   4,000 00
"To Edward L. Thomas..  ................................   5,000 00

"All the balance of said bonds to Samuel H. Leathe, treasurer, $62,500."

Said trustee thereupon delivered bonds as directed in said resolution to all the contributors except appellee, and stood ready to deliver to him, but those intended for him were for some reason not explained so far as we find in this record attached by Leathe, who was president of the corporation. Pending this attachment the following agreement was entered into between the Crown Coal and Tow Company, appellant, and Edward L. Thomas, appellee:

"Whereas, Edward L. Thomas has certain claims against the Crown Coal and Tow Company, based upon what he claims to be his portion of the purchase price of certain coal pits which were turned over to said company by him and his associates, and whereas, a partial settlement of the said claims has heretofore been made, and certain bonds of said company were set aside to said Edward L. Thomas, as in satisfaction or settlement of a portion of said claims, in consideration of the surrender of whatever interest in said bonds the said Edward L. Thomas may have; it is agreed by the said company that any former arrangement or settlement made between the parties, namely, said Thomas and said company growing out of the said transactions, shall be considered abrogated and annulled, and as though it had never been made, and the said Edward L. Thomas shall be relegated to any actions or suits that he may be advised be proper for

the purpose of adjusting and settling the differences between him and the said company, growing out of said purchase money or other moneys which he may claim to be due him on account of the transactions hereinbefore mentioned.

"Dated this eighth day of November, A. D. 1895.

"CROWN COAL AND TOW COMPANY,

"By S. H. LEATHE, President.

"We ratify the above, this November eighth, 1895.

SAM'L LEATHE, Director.

"JOHN T. TAYLOR, Director.

"BART S. ADAMS, Director.

"FRED B. MERRILLS."

Upon the execution of this agreement the bonds set apart to appellee were surrendered to appellant and hereafter appellee instituted his suit, which progressed under the original bill to the rendition of an interlocutory decree referring the cause to the master, who took testimony and made report to the court, from which it appears that the balance chargeable to appellant on account of the "book accounts belonging to the Crown Coal Company, after deducting the debts of that company, including the $4,500 due Meisenberger from appellee, Adams and Taylor, which appellant had undertaken to pay out of this fund and had so paid amounting to $10,281.56, that the Crown Coal Company's property and good will was taken by appellant at $18,000 and that appellee's portion of the contribution made by himself, Adams and Taylor, to the property of appellant at the time of the reorganization was twenty-nine one hundred and twelfths of these amounts, and that appellee owed appellant a small note with accrued interest amounting to $306.29, showing a balance in favor of appellee of $6,309.89.

Objections and exceptions were filed to the master's report, and a final hearing had upon an amended and

supplemental bill, and answer thereto, and a decree rendered in favor of appellee against the appellant for $6,309.89.

The following errors in substance are assigned and urged:

The court erred in rendering the interlocutory decree, in not dismissing complainant's bill, in not sustaining exceptions to master's report, finding for complainant and rendering the final decree.

It is contended that there is no competent evidence in this record of any agreement to reimburse, that appellee was paid for his interest in the contribution to the property of appellant in stock, that he has been paid to the extent of $5,000 in bonds set apart for him in pursuance of the resolution of March 10, 1894, that by the agreement of November 8, 1895, appellant is released from all obligation and duty to pay him, that if any right to recover ever existed it was as a stockholder, and that before the decree in this case was rendered he had sold his stock, and finally, that if appellee has any remedy, it is not in chancery but in an action at law by himself, Adams and Taylor.

The Crown Coal Company had on hands cash to the amount of between $2,000 and $3,000, a considerable amount of supplies, a large number of items of book accounts due it for coal, amounting to near $20,000; and owed current expenses and other indebtedness consisting of many items, and at the time its mine was turned over to appellant by appellee and his associates, Adams and Taylor, its then owner, it was a going concern.   The new organization desired to keep this mine in continuous operation, and to that end the moneys, supplies and book accounts of the Crown Coal Company were turned over to it as a part of the contribution of appellee, Adams and Taylor, to its property. Appellant absorbed the cash in its business, used up

the supplies, and undertook the collection of the book accounts and the payment of the debts, opening a separate account with this fund. This account was intricate and involved, and a great portion of the testimony in this voluminous record relates to it and to contests and investigations concerning items of it. The interest of appellee in both this fund and in the mine and good will was involved with Adams and Taylor, who were also made defendants.

Where the state of accounts between the parties is complicated and intricate, where the state of accounts between the parties is involved with third parties, where to do justice requires the employment of methods of investigation peculiar to courts of equity, and where it would be very difficult for a jury to unravel the numerous transactions, are conditions usually held to be sufficient to give a court of equity jurisdiction. The jurisdiction in equity does not in such cases depend upon the absence of a remedy at law, but upon its adequacy or practicability, and upon the discretion of the court. This case is sufficiently involved, complicated and intricate to justify a court of equity in taking jurisdiction of it.

It is true that the agreement and understanding that the contributors to the property of the reorganized concern should be by it reimbursed for the property contributed by them respectively, as first made and understood, are not evidenced by any resolution or minute action taken at a stockholders' or directors' meeting, but the oral evidence clearly shows that such agreement was entered into and that such understanding did exist. Leathe, Borman, Chipley, Thomas, Taylor, B. S. Adams and B. F. Adams, all testify to it, and it is not controverted. This evidence is competent and material to the proper understanding of the resolutions of March 1 and March 10, 1894.

The oral testimony also clearly shows the truth of the recital in the resolution of March 1, that "the capital stock of this company has been contributed by various stockholders in unequal portions without reference to the amounts contributed." With all these facts before them and clearly understood, the stockholders and directors did as is properly proven by minutes of proceedings at their respective meetings of March 1 and March 10, 1894, fully ratify and confirm the agreement and understanding shown by the oral evidence. The obligation to reimburse is proven by competent evidence, the whole scheme as shown by the evidence manifests the fact that the value of the property of appellant was to be in its bonds and not in its stock, appellee was not paid for his interest in the contribution to the property of the company in stock, and reimbursement was actually made in bonds to all the other contributors, which of itself is a condition calling in equity for like treatment of appellee. True, bonds were set apart for appellee, but before they reached him, by the agreement of November 8, 1895, he surrendered back to appellant all of such bonds for no other consideration, so far as appears, than that he might prosecute a suit for recovery of the value of his interest in the contribution by himself and his associates to the property of appellant without prejudice by the act of surrendering his claim to the bonds. Such transaction can not, in a court of equity, be held to be payment. The "former arrangement or settlement" which was "abrogated and annulled" by that agreement, is the arrangement to pay a portion of appellee's claim in bonds, the right to demand and, by suit, to compel payment is reserved; and in our opinion appellant is not by that agreement released from all obligation or duty to pay appellee. Although appellee had disposed of his stock in appellant company before the decree in this case

was rendered, we are of opinion he is not thereby barred. In our view of the case his right to recover is not dependent upon his being a stockholder. The stock was distributed "without reference to the amounts contributed" and large blocks of it given to persons who had contributed nothing. His right to recover is not incident to his stock, but to his having contributed to the property of appellant under an agreement and understanding that he should be reimbursed and the ratification and confirmation of that agreement and understanding, by appellant. There was no error in rendering the interlocutory decree and refusing to dismiss complainant's bill.

The objections and exceptions to the master's report are not abstracted. Appellant in his reply brief says: "In the abstract it has not been thought necessary to set out the exceptions to the master's report in detail, because the court is not asked to consider the report in detail," and "It is not a question of computation and calculation. Our contention is, the whole thing is wrong." After this case was referred to the master and while it was pending before him, a suit was instituted in the Circuit Court of St. Louis county, Missouri, by the St. Louis Dredging Company against appellant on an alleged note of the Crown Coal Company, and proof of the pendency of that suit was made before the master. Complaint is made that the master did not in his statement of account allow the demand in that suit against appellee and that the court did not on account of the pendency of that suit arrest the further prosecution of this one. It is not contended that should we look into the evidence taken before the master we would find any testimony tending to show that this was a *bona fide* suit, that the Crown Coal Company really owed such a debt, or that the appellant was liable therefor in any manner on account of the Crown Coal Com-

pany.   We have looked into the record and do not find any such testimony.   This was a proper item to bring before the master, and if a valid charge against appellee, it should have been proven the same as any other item. It appears the master was of opinion that the mere pendency of the suit was not sufficient proof and excluded it, and no exceptions to his report appear in the abstract.

It does not appear from the record that any application was made to the court to stay the proceedings in this case until the St. Louis case could be litigated. Such an application at any time before final decree, supported by a proper showing of probable liability on account of that demand, would doubtless have been granted, or some order made fully protecting appellant.

Whoever assails a master's report should preserve his exceptions, bring them into his abstract and show the report to be wrong.

Whoever challenges the action of a court should show that in apt time he properly advised and moved the court.

We find no error in sustaining the master's report, in finding for complainant, or in rendering the final decree.   Decree affirmed.